# United States District Court
### IN THE DISTRICT OF COLUMBIA

Carl Roger Davis, and
Jo Elaine Davis,
P.O. Box 6207
Branson, Missouri

Case No. <u>1:05-cv-02474</u>

          Plaintiff(s),

v.

United States
          Defendant.

## I
## INTRODUCTION

1. Plaintiff hereby responds to defendant's MOTION TO DISMISS, with ample points and authorities is support of denying dismissal on any ground cited.

## II.
## DEFENDANT MOVES TO DISMISS A "REFUND SUIT" NOT FILED

2. Defendant's MOTION TO DISMISS[1] assumes, based solely upon a poorly worded damages request, that the case at bar is a refund suit under section 7422 of the Internal Revenue Code, rather than a damages suit under section 7433, as clearly stated.

3. To the extent that Counsel's misreading, misunderstanding, mischaracterization

---

[1] As distinguished from the Memorandum In Support.



RECEIVED
APR 6 - 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

and misrepresentation (See: Motion for Sanctions and Referral to the BAR Disciplinary Committee, filed concurrently) may be due to an inarticulate damages request, Plaintiff(s) respectfully contends that the action should be construed by its substance, i.e., as the damages claim that it is. Alternatively, Plaintiff(s) respectfully request(s) leave to amend the Complaint to remove the confusing language. With knowledge that Fed. R. Civ. P. 15(a) establishes a Party's right to amend pleadings before a responsive pleading is served, Plaintiff(s) nonetheless request(s) the Court grant leave to amend, which "shall be freely given when justice so requires". Rule 15(a), Federal Rules of Civil Procedure.

### III

### DEFENDANT'S "SUBJECT MATTER JURISDICTION" MISREPRESENTS CASE

2. Counsel knows, or should know, that Internal Revenue Code sections 7422 and 7433 cannot be construed in pari materia. As stated by Justice Ginsburg in WACHOVIA BANK, N. A. v. SCHMIDT (04-1186), decided January 17, 2006, "...under the in pari materia canon, statutes addressing the same subject matter generally should be read " 'as if they were one law,' " Erlenbaugh v. United States, 409 U.S. 239, 243." Internal Revenue Code sections 7422 and 7433 address completely different subject matter.

4. The subject matter of Internal Revenue Code section 7433, and of the Complaint brought thereunder, is damages for unauthorized collection action(s), not refund of taxes assessed; in fact, the only connection to the "7433 Complaint" found within the body of Counsel's Motion to Dismiss is Counsel's acknowledgment

that the lack of a 23C Summary Record of Assessment is (notwithstanding Counsel's misreading, misunderstanding, mischaracterization and misrepresentation) one of the *many allegations* raised in the Complaint.

3. Counsel knows, or should know, that the Court has subject matter jurisdiction of the IRC section 7433 damages suit she seeks to dismiss (as a 7422 refund suit). In relying solely upon jurisdictional prerequisites of section 7422 to dismiss a damages action brought under section 7433, Counsel ignores "the controlling significance of context," recognized by Ginsburg, J., in the recent Supreme Court decision. Whatever the jurisdictional prerequisites of section 7422, none apply in the context of a damages suit brought under section 7433, the statutory provision under which the Complaint was brought. Plaintiff(s) seek(s) first a determination as to whether officers or employees of defendant's agent disregarded the provisions of the Internal Revenue Code or regulations promulgated thereunder in connection with collection activity, as alleged. If, at trial, the Court finds as fact that such unauthorized collection actions were committed, damages — authorized by Congress — may then be determined; tort damages are in no sense a "refund".

3. Alternatively, if the Court finds that no provisions of the Internal Revenue Code or regulations promulgated thereunder were disregarded, then "refund" becomes the justiciable issue, and the proper venue for such "refund" action may then be determined.

## IV.

## VENUE IS PROPER BECAUSE EXERCISE OF OFFICE OCCURS IN THE DISTRICT

## OF COLUMBIA

4. The District of Columbia is the permanent seat of government of the United States pursuant to Title 4, United States Code, § 71, 61 Stat. 643. "The Office of the Secretary" is required to be exercised in the seat of government, pursuant to Title 4, United States Code, § 72, 61 Stat. 643, and is addressed at 1500 Pennsylvania. Ave. N.W., Washington D.C. 20224.

5. Venue, for purposes of seeking judicial determination with respect to the matters presently before the Court, is proper in the District of Columbia.

## VI

## PROPER CONSTRUCTION OF ACTION, OR ALTERNATIVE AMENDMENT OF COMPLAINT, REMOVES BASIS FOR CONFUSION

6. Plaintiff(s) have/has an amended Complaint prepared, removing any reference to "unassessed amounts", and are prepared to file such amended complaint in the event the Court deems amendment necessary. Plaintiff(s) apologize(s) for confusing the Court. With respect to such possible amendment, Plaintiff(s) respectfully point out that a motion to dismiss complaint under rule 12 is not a 'responsive pleading' within rule 15's amendment provisions. Christophides v. Porco, D.C.N.Y. 1968, 289 F.Supp. 403; an ill-conceived defense motion, raising irrelevant, immaterial issues (See: Motion to Strike, and Motion for Sanctions and for Referral to BAR Disciplinary Committee), is ineffective with respect to a first, righteous amendment.

## VII

## ISSUES RAISED IN MEMORANDUM UNAVAILING

7. Defendant raises, in the Memorandum only, that our damages action must be dismissed on the basis of the Anti-Injunction Statute, IRC § 7421. In arguing this issue, defendant acknowledges the exception recognized by the Supreme Court in Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7 (1962). However, defendant, while paraphrasing the Enochs Court:

> "the Supreme Court decided that the Anti-Injunction Act would not apply (1) if, when the facts and law are examined in the light most favorable to the government, under no circumstances could the government prevail, and (2) equity jurisdiction otherwise existed",

defendant seeks to examination of facts and law in any light. Plaintiff(s) contend that judicial examination must occur in order to arrive at the defendant's legal conclusion.

8. As to the defendant's opinions regarding the Court's equity jurisdiction, Plaintiff(s) contend that this legal conclusion, as well, is for the Court, and not the defendant. In that regard, Plaintiff(s) offer the following for the Court's consideration:

9. Based upon a history of unsuccessfully seeking answers and agency records providing a basis for such answers, Plaintiff(s) have asserted that they have either exhausted administrative remedies available, or that such administrative remedies are inadequate. In so claiming, Plaintiff(s) seek the Court's exercise of the equity jurisdiction conferred in Section 11 of the Judiciary Act of 1789, 1 Stat. 78.

10. A court sitting in equity cannot "ignore the judgment of Congress, deliberately expressed in legislation." Virginian R. Co. v. Railway Employees, 300 U.S. 515, 551 (1937).

11. In the Motion to Dismiss, Counsel correctly reads § 7433(d)(1) in quoting "a judgment for damages shall not be awarded under [§ 7433] unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

12. Counsel correctly reads the regulation governing such administrative remedies: These regulations make clear that an "action for damages filed in federal district court may not be maintained unless the taxpayer has filed an administrative claim pursuant to . . . this section." Id. § 301.7433-1(a)."

13. Accepting the regulation as definitive, counsel states "Failure to comply...deprives a court of jurisdiction. See McGuirl v. United States, 360 F. Supp. 2d 125, 128 (D.D.C. 2004); Venen v. United States, 38 F.3d 100, 103 (3d Cir. 1994)."

14. With all due respect, the history of IRC section 7433 shows that Venen was correctly decided under TBOR I's express proscription. Plaintiff(s) contend that the current regulation, upon which McGuirl was decided, and upon which the instant case hinges,
    - is an unreasonable interpretation of the current statutory provision; and,
    - exceeds the authority of the current statutory provision
        - by impermissibly extending the operation of the exhaustion requirement; and,
        - by frustrating Congress' intent in creating, and amending, 7433; and,
        - by effectively converting a "7433 damages" claim into a "7422 refund" claim.

15. The history, i.e., the evolution of Congress' language, shows that Congress, in proscribing a damages award absent the Court's own satisfaction with respect to administrative exhaustion - without reinstating TBOR I's express proscription - left the court's equity jurisdiction intact.

### VIII.

### HISTORY OF 7433 Taxpayer Bill of Rights (TBOR I)

16. Congress inserted 7433 into the Internal Revenue Code in the Taxpayer Bill of Rights. Although Plaintiff(s) have been unable to find the actual Act of Congress, a comprehensive discussion was published by the American Bar Association:

"Section 7433 also removes tax collection controversies between taxpayers and the IRS from the jurisdiction of federal courts and places them in the IRS administrative bureaucracy. Section 7433(d) requires taxpayers to exhaust their administrative remedies before filing section 7433 actions in district court. In 1996, the Taxpayer Bill of Rights 2 (TBOR 2) eliminated the exhaustion requirement, permitting district courts to hear section 7433 claims provided that damage awards are reduced when the claimant does not exhaust administrative remedies."

17. The Bar is correct regarding the 1996 amendment.

### IX.

### HISTORY OF 7433 Taxpayer Bill of Rights (TBOR II)

18. PUBLIC LAW 104-168 (JULY 30, 1996) 110 STAT. 1453, entitled "An Act To amend the Internal Revenue Code of 1986 to provide for increased taxpayer protections," TBOR II's Title VIII, SEC. 802 amended Paragraph (1) of section 7433(d) to read:

"The amount of damages awarded under subsection (b) may be reduced if the

court determines that the plaintiff has not exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

19. The Bar then opined that

"However, Congress reinstated the exhaustion requirement in the 1998 Act."

20. The Bar is not precisely correct in this assertion. The IRS Restructuring and Reform Act of 1998, Pub. L 105-206 (RRA '98), struck a delicate balance between TBOR I's "absolutely not" provision and TBOR II's "judgment may be reduced" amendment. Section 7433, as re-amended by RRA '98, is <u>silent</u> with respect to bringing or maintaining a 7433 action. The revision states no more than "...no judgment shall be awarded..." unless the Court is satisfied that administrative remedies available have been exhausted. 7433, in its current incarnation, neither prohibits, nor precludes, equitable relief. To paraphrase the Bar, 7433 now permits "district courts to hear section 7433 claims provided that..." in the absence of the Court's satisfaction as to administrative exhaustion, "...no judgment shall be awarded...".

21. Before proceeding to the issue of the Court's equity jurisdiction, I respectfully direct the Court's attention to what the Bar had to say about the re-amendment:

"Congress should not have re-imposed the exhaustion provision. Many plaintiffs bring their actions to federal court under section 7433 because they do not trust the IRS to seriously consider their claims. Furthermore, most pro se plaintiffs do not understand the meaning of exhaustion of administrative remedies. These plaintiffs should not be penalized by their good-faith ignorance; instead, federal courts should hear their claims if valid. In addition, few pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should understand many people's distrust of the ability of the IRS to proceed with their claims..."

22. As discussed below, the Bar's recognition that "few pro se plaintiffs have actual

notice of the process" is but one of many reasons the Court should exercise its equity powers.

## X.

### WHY THE COURT SHOULD EXERCISE ITS EXTRAORDINARY POWERS

23. Subject-matter jurisdiction presents a threshold question. Federal courts of limited jurisdiction have only the power to hear those cases over which Congress has conferred subject-matter jurisdiction upon them. In this case, the district court has subject-matter jurisdiction pursuant to 7433; the sole limitation in the current provision is whether the Court may grant judgment in favor of the Plaintiff(s) without first satisfying itself that Plaintiff(s) have exhausted administrative remedies "available". While administrative remedies are called for in 7433, it is the "availability" of those remedies upon which the limitation rests.

24. Based upon the language of the regulation itself, and upon repeated agency actions of the Internal Revenue Service demonstrating disregard of governing statutes, regulations, and Service policies, Plaintiff(s) contend that the administrative "remedies" purportedly provided for - as implemented by regulation - are at best unavailable, and at worst, wholly inadequate.

### AVAILABILITY OF REMEDY

25. As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until

February 18, 1992.

26. In respect of Congress' removal of the jurisdictional prohibition in TBOR II, it appears that IRS failed to amend the regulation to reflect Congress' intent at all.

27. It is clear, however, that the current regulation, as amended by T.D. 9050, 68 FR 14320, was not promulgated until March 25, 2003, more than four years and nine months after Congress' re-amendment in RRA 98. This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's administrative exhaustion requirement.   IRS intends not to be sued.

28. To show that the above history accurately reflects IRS intent, the Court's attention is respectfully directed to IRS policy regarding return of amounts unlawfully collected.

29. Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts unlawfully collected. P-5-36 states:

"(1)   Returning money wrongfully collected: This Policy Statement has been revoked."

30. Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have existed was revoked. The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

THE REGULATION IS AN UNREASONABLE INTERPRETATION

31. The current regulation requires that an injured Citizen wait up to six months for a

ruling on an administrative claim before bringing a civil suit. This half-year waiting period is extreme. In the context for which the provision was created, this is tantamount to a complete frustration of Congress' intent. Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate. SEE: excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, below.

THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

32. In construing 7433's current incarnation, the starting point must be the language employed by Congress. See: Reiter v Sonotone Corp., 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. Richards v United States, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, Consumer Product Safety Comm'n v GTE Sylvania, Inc., 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. Fuller v. United States, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards v. United States, supra.

33. 7433's current language merely restricts an award of damages unless the Court is satisfied that administrative remedies (shown by Service Policy P-5-36, above, to be essentially unavailable absent judicial intervention) have been exhausted. Yet the regulation quoted by counsel states that "...no suit may be maintained..." in the absence of administrative exhaustion. This is the language that Congress

expressly removed from 7433 in TBOR II; this more restrictive language was omitted from the RRA 98 re-amendment restricting award of judgment. It must be assumed that Congress, in omitting TBOR I's more restrictive language from RRA 98's re-amendment, intended that omission.

34. As stated by the Supreme Court in Morton v. Ruiz, 415 U.S. 199 (1974): The agency power to make rules that affect substantial individual rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, FMC v. Seatrain Lines, Inc., 411 U.S. 726 (1973); Dixon v. United States, 381 U.S. 68, 74 (1965); Brannan v. Stark, 342 U.S. 451 (1952), but also to employ procedures that conform to the law. See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764 (1969) (plurality opinion). Lack of specific attention to the statutory authorization is especially important in light of the Supreme Court's pronouncement in Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), quoted in Adamo Wrecking Co. v. United States, 434 U.S. 275, 287 n. 5 (1978), and cited in SEC v. Sloan, 436 U.S. 103 (1978), specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." SEC v. Sloan, 436 U.S. 103, 117-118.

35. The regulation itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness...in its consideration" (Sloan). In 301.7433-1's subsection (a), paragraph (1), "reckless

or intentional actions" is changed; one must have "...damages sustained as a proximate result of the reckless or international actions..." (emphasis added).

36. More egregious, however, is the fact that the regulation, which elaborates on all other aspects of the statutory provision, completely ignores the payment authorization provision in IRC section 7433(c). It is apparent that IRS intends to block any effort to recover damages even though Congress has authorized payment therefor.

37. To the extent that Treasury Decision 9050 "re-imposes" the more restrictive language of TBOR I, the regulation exceeds the authority of 7433 in its current form.

38. To the extent that Treasury Decision 9050 re-imposes the prohibition of TBOR I, the regulation fails to remain consistent with the governing legislation; and fails "all those factors which give it power to persuade."

39. To the extent that IRS has demonstrated an intent to frustrate Congress' intent through administrative rule, the regulation must fail.

REGULATION CONVERTS DAMAGES ACTION INTO REFUND ACTION

40. By requiring that Plaintiff(s) (claimants) place a specific value upon injuries claimed, the regulation effectively neuters the statutory provision in instances where, as alleged in Plaintiff(s) complaint, the threshold issue of whether an assessment has been properly made is raised. If IRS refuses to investigate that threshold issue, IRS denies a meaningful Collection Due Process Hearing; a "collection" might not yet have occurred, yet Plaintiff(s) right to challenge the existence of the underlying liability - established in the statutory provision

(6330(c)(2)(B)) - is thwarted.

41. Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions. National Labor Relations Board v. Brown, 380 U.S. 278, 291-292.

THE REGULATION FRUSTRATES CONGRESS' INTENT

42. TBOR I, TBOR II, and RRA '98 are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision. Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at Berkeley,

"The IRS's comparative advantage is using random terror to elicit voluntary compliance with the tax code...".

43. Congress intended that Citizens harmed by IRS' legendary disregard of governing statutes and regulations have an avenue to be made whole under section 7433, albeit with a prior administrative review. Once again, the key is availability of the administrative remedy. Availability can be likened to adequacy. As a matter of broad administrative law, if administrative remedy is inadequate, it need not be pursued. The Morton Court supra, opined, at 235:

Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

44. As established in the Code of Federal Regulations, IRS refused to even

establish procedures for four years after the right to bring an action was granted by Congress, and currently imposes a prohibitive provision omitted by Congress. Administrative remedy, available in form, is unavailable in substance.

45. The Court will note that Plaintiff(s) alleged numerous failures of IRS to comply with governing statutes, regulations, and policies. These allegations, for purposes of motion to dismiss, have been admitted. Defendant thus brings the motion to dismiss with unclean hands.

CLEAN HANDS DOCTRINE

46. As an example of IRS' unclean hands, Plaintiff(s) provide this excerpt from the NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS EXECUTIVE SUMMARY:

THE MOST SERIOUS PROBLEMS ENCOUNTERED BY TAXPAYERS

6. Levies on Social Security Payments. In general, recipients of Social Security benefits are elderly or disabled workers, or the surviving dependents of deceased workers. The IRS continues to process levies on Social Security payments without sufficient managerial review, causing undue burden on a vulnerable population of taxpayers. The National Taxpayer Advocate urges the IRS to implement safeguards that would prevent levies from being imposed on Social Security payments to low income and other at-risk taxpayers.
7. Appeals Campus Centralization. The IRS Office of Appeals ("Appeals") has centralized its work on certain types of cases at six IRS campuses; these cases previously were resolved in field offices closer to taxpayers. Appeals campus centralization is aimed at decreasing the time it takes for a taxpayer to resolve a case. While this aim is appropriate and admirable, the National Taxpayer Advocate is concerned that centralizing Appeals case resolution may actually increase taxpayer burden. Centralization may reduce opportunities for taxpayers to have their cases resolved at the local level, diminish working relationships between taxpayers and Appeals employees, increase emphasis on processing at the expense of independent judgment, and diminish service for low income and unrepresented taxpayers. The National Taxpayer Advocate urges Appeals to alleviate these problems and protect taxpayers' appeal rights by developing specific training that will help employees carry out Appeals' independent mission in the campus environment. We recommend that Appeals monitor campus

activity to ensure that taxpayers - particularly low income taxpayers - receive full and fair consideration of their cases and are adequately notified of their right to request a case transfer to a local Appeals office.

11. Automated Collection System Levy Releases. Collection efforts through the IRS's Automated Collection System (ACS) can result in levies of bank accounts, wages, or other income such as Social Security. In response to these levies, taxpayers will contact the IRS seeking to enter into a collection alternative, such as an installment agreement. The IRS can also designate an account as "currently not collectible" if the taxpayer can demonstrate a financial hardship. The Internal Revenue Code and Treasury Regulations require that the IRS promptly release levies when taxpayers enter into installment agreements or when they demonstrate the existence of a hardship. Some taxpayers encounter problems with the levy release, including clerical errors, delays that result in additional levies on taxpayer assets or income, or the IRS not returning levy proceeds when a delayed levy release results in additional levies. Delays are also due in part to taxpayers' failure to request expedited levy releases so that the release can be faxed to the third party levy source. The IRS has improved the levy release process for currently-not-collectible accounts and has agreed to consider similar system changes for installment agreements, and require additional training for employees. We encourage the IRS to consider revising its procedures so that all levy releases are assumed to require expedited procedures.

15. Mandatory Briefings for IRS Employees on TAS. Internal Revenue Code § 7803(c)(2)(C)(ii) requires the National Taxpayer Advocate to develop guidance for all IRS officers and employees, outlining the criteria for referral of cases to the Taxpayer Advocate Service (TAS). The IRS has denied the request of the National Taxpayer Advocate to include TAS training among its annual mandatory briefings for all employees. Instead, the IRS has agreed to provide TAS training to contact employees in the Wage and Investment and Small Business/Self-Employed operating divisions on a one-time basis, and urges TAS to train the rest of the employees through methods such as the IRS intranet, inserts in employee Earnings & Leave statements, and "wallet cards." The National Taxpayer Advocate urges the IRS to rethink its position and grant her request to make TAS training mandatory for all employees.

47. Based upon the foregoing opinion of the National Taxpayer Advocate, and the admitted allegations in Plaintiff(s) Complaint, IRS, and the Principal for which it operates, comes with unclean hands, and the United States should not now be allowed to invoke administrative provisions to preclude having to answer for IRS' willful disregard.

## ADMITTED ALLEGATIONS PROVIDE MORE EVIDENCE OF UNCLEAN HANDS

48. Among the allegations admitted by defendant's failure to deny/motion to dismiss is that no proper assessment has been made for any year in question, i.e., that no document signed by a duly appointed Assessment Officer exists. On the basis of information contained in the Internal Revenue Manual, Plaintiff(s) has/have identified this document as a Form 23C. As discussed in the defendant in March v. Internal Revenue Service -- 335 F.3d 1186 (2003):

> "[R]egardless of the form used, the IRS must comply with the regulations governing the assessment process. The purpose of these regulations is to ensure both the efficiency and the accuracy of the assessment process. The signature requirement in 26 C.F.R. § 301.6203-1 appears to serve multiple purposes. The requirement ensures that an assessment officer reviews the assessment before it is sent to the taxpayer, and the placing of the officer's signature establishes an effective date of the assessment that is relevant for certain timing requirements.

49. In discussing how IRS circumvents the legal requirement, the March Court said:

> "In reality, the courts have created a legal fiction in which the submission of Form 4340, which lists a "23C Date," creates a presumption that a Form 23C was signed. While the courts have said that this presumption is rebuttable by the taxpayer, the IRS concedes that "when the Debtors argue that the 23C Forms were Never produced, it is because they probably do not physically exist." Aple. Br. at 15 n.2. In other words, the IRS gets the benefit of a presumption that they admit is likely false."

50. The Court will take Judicial Notice that the Form 4340 "which lists a '23C Date,'" (sic) certifies only that IRS computer records reflect certain data; it does not certify the accuracy of that data. In order to be admissible in evidence, the accuracy of the data must be ascertained, and the defendant's counsel knows this. See: Brief on Admissibility of Computer Evidence, attached.

51. Lastly, counsel for the United States is well aware that "[U]nder the

Administrative Procedure Act, 5 U.S.C. 704, a person aggrieved by an agency action can seek judicial review of the action without exhausting an available administrative appeal, unless the agency's regulations provide both (1) that the administrative appeal must be taken, and (2) that during the pendency of the administrative appeal the agency action shall be inoperative." Darby v. Cisneros, 509 U.S. 137 (1993), quoted in the U.S. Attorney's Manual, Civil Resource Manual, Title 4.

52. The filing of an administrative claim under regulation 301.7433-1 fails to meet the second prong of 5 U.S.C. 704, as recognized in Darby, and as counsel well knows.

SUMMARY

53. The right to file a civil suit for damages was intended to protect taxpayers from an out of control agency. The administrative remedies provision was intended to facilitate that right. Paraphrasing Pacific Tel. & Tel. Co. v. Public Util. Comm'n, 443 U.S. 1301 (1979):

Here, the administrative action [the regulation] was the source of the claimed wrong, not a possible avenue for its redress.

54. Plaintiff(s) respectfully request(s) the Court exercise its equitable powers; find that administrative remedies are inadequate, futile, or have otherwise been exhausted; deny the motion to dismiss, and direct the defendant to answer the suit.

/////

/////

Dated: *April 4*, 2006

*/s/ Carl Roger Davis*
Carl Roger Davis

*/s/ Jo Elaine Davis*
Jo Elaine Davis

DISTRICT COURT OF THE UNITED STATES
DISTRICT OF COLUMBIA

| | |
|---|---|
| Carl Roger Davis and <br> Jo Elaine Davis, <br> Plaintiff(s), <br> vs <br> UNITED STATES <br> Defendant. | Case No. Case No. 1:05-cv-02474 RMC <br><br> CERTIFICATE OF SERVICE |

I, Carl Roger Davis, certify that on the 4th, day of April, 2006, I caused to be mailed—a true and correct copy of the Response to Defendant's Motion to Dismiss with Points and Authorities by Certified Mail, postage fully prepaid addressed as follows:

**Beatriz T. Saiz**
Trial Attorney, Tax Division
U.S. DEPARTMENT OF JUSTICE
P.O. Box 227
Washington, DC 20044


**Pat S. Genis**
US Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, DC 20044

**Certified Mail No. 7004 2890 0002 0003 0597**

Dated this 4th day of April, 2006.