UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CARL ROGER DAVIS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05-2474 (RMC) |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

### MEMORANDUM OPINION

The United States moves to dismiss the complaint of Carl Roger Davis and Jo Elaine Davis, who allege that they are entitled to monetary damages, a refund of unassessed taxes, and an injunction to restrain the Internal Revenue Service ("IRS") from continuing reckless, intentional, and negligent conduct that disregards provisions of the Internal Revenue Code ("Code") and its regulations. Compl., Prayer for Relief ¶ 1.2. The United States argues that the Plaintiffs did not properly serve the IRS, filed this suit in the improper venue, and failed to exhaust their administrative remedies. Although the Plaintiffs acknowledge that they did not follow the administrative procedures set forth in the Code regulations, they assert that the regulatory scheme is invalid and unavailable to them as a practical matter. After careful review of the Plaintiffs' Complaint and their opposition to the Government's motion to dismiss, and recognizing that Plaintiffs are proceeding *pro se* in this matter, the Court finds that the Complaint must be dismissed because the Plaintiffs did not exhaust administrative remedies with regard to their refund and damages claims and because the Anti-Injunction Act, 26 U.S.C. § 7421(a), bars their request for an injunction.

# I. BACKGROUND

The Plaintiffs have had a running tax dispute with the IRS since at least 2000. *See* Compl. ¶ IV.A. They have filed various demand letters with the IRS District Director in Oklahoma City, Oklahoma; the IRS General Counsel; IRS Agent Timothy E. Noonan; and the Treasury Inspector General for Tax Administration ("TIGTA"), among others. *Id.* ¶¶ 1, 5, 7, 9, 11, 13, 15-18; *see also id.*, Ex. 1 (Affidavit of Carl and Jo Elaine Davis). When the IRS continued its investigation into their tax returns – by subpoenaing documents from banks, credit sources, trusts, mortgage companies, and employers, and by ordering Plaintiffs to appear before a Grand Jury – they filed suit on December 23, 2005, pursuant to the Taxpayer Bill of Rights ("TBOR"), 28 U.S.C. § 7433, seeking damages for reckless, intentional, and negligent actions by the IRS. *Id.* ¶ IV; *see also id.*, Prayer for Relief ¶ 1.2. Plaintiffs also seek a refund of "all un-assessed [sic] taxes, return of all seized property, [and] return of all levied funds," as well as an injunction to prevent "further collection activity." *Id.*, Prayer for Relief ¶¶ 1.4, 1.5. Their suit is nearly identical to others filed recently in this Court, seeking money damages from the IRS. *See, e.g., Gaines v. United States*, 424 F. Supp. 2d 219, 221 (D.D.C. 2006) (collecting cases).

The parties agree that the Code and its regulations require a claimant to exhaust available administrative remedies prior to suit. *See* 26 U.S.C. § 7433(d)(1); *see also* Pls.' Opp. at 6. The Plaintiffs concede, by not contesting, that they never filed an administrative claim prior to filing suit. Nevertheless, the Plaintiffs argue that the Court should retain this suit on its docket in an exercise of the Court's equity jurisdiction. Pls.' Opp. at 5. Further,

> [b]ased upon a history of unsuccessfully seeking answers and agency records providing a basis for such answers Plaintiff(s) [sic] have asserted that they have either exhausted administrative remedies available, or that such administrative remedies are inadequate.

*Id.* The United States takes the position that the Court lacks subject-matter jurisdiction over the Plaintiffs' damages claim and that the Plaintiffs have failed to state a claim for damages upon which relief can be granted. Def's. Mot. at 3-4. It asserts that a pre-suit administrative claim is a necessary predicate for the Government's waiver of sovereign immunity, without which the Court has no jurisdiction. According to the United States, any lawsuit challenging the IRS is fatally deficient unless administrative remedies have been exhausted prior to litigation. *Id.* at 8.

Plaintiffs argue that they should not be limited by the Code or its regulations because they have repeatedly requested information from the IRS without success. Pls.' Opp. at 5. They base their argument on their October 25, 2000, request to the IRS District Director in Oklahoma City for the IRS "to produce competent evidence of [its] compliance . . . with section 6001, subsection (d) of the Internal Revenue Code . . . and, [sic] authority for operation of sections 6201, 6321, and 6331 . . . upon those denied the notice mandated in section 6001, subsection (d)." Compl. ¶ IV.A. Thereafter, when Agent Noonan attempted to interview Mr. Davis and sent a notice of his intent to contact other persons, the Plaintiffs objected to third-party contacts concerning their tax returns and notified Agent Noonan that unauthorized disclosure of tax information could lead to a possible action for damages. *Id.* ¶ IV.I. When Agent Noonan attempted a later appointment, Plaintiffs "called for Noonan to provide access to records of Noonan's authority, including his oath of office, commission, and bond, and requesting same." *Id.* ¶ IV.L. On or about August 14, 2002, Plaintiffs filed a TIGTA complaint, based upon Agent Noonan's failure to produce evidence of his enforcement authority, but received no response. *Id.* ¶ IV.N. Starting in December 2002, Agent Noonan issued various summonses "'In the matter [sic] of Roger C. Davis' . . . seeking testimony and records for a planned criminal investigation." *See, e.g., id.* ¶ IV.O; *see also id.* ¶ IV.S (seeking

testimony and records related to Jo Elaine Davis). These summonses, Plaintiffs allege, were issued in retaliation for the TIGTA complaint concerning Agent Noonan's failure to produce evidence of his enforcement authority. *Id.* ¶ IV.O.2.

It appears that Special Agent James "Tony" Strother took over the investigation because he began issuing summonses in May 2004 regarding Plaintiffs and "seeking testimony and records for a planned criminal investigation." *See, e.g., id.* ¶ IV.EE. Plaintiffs presume that Special Agent Strother is a criminal investigator, *id.* ¶ IV.EE.1, and challenge his use of administrative summonses for purposes of criminal investigations and prosecutions as violative of the Code, *id.* ¶ IV.EE.2 (citing 26 U.S.C. § 2 7602(d)(1) [sic]). Agent Strother's investigations are asserted also to be in retaliation for the earlier TIGTA complaint. *Id.* ¶ IV.EE.5.

In sum, Plaintiffs' suit arises from the failure of the IRS and its officials to provide requested information on demand. Given their previous unanswered demands, Plaintiffs argue that they should not be forced into the administrative process prior to suit. The United States seeks to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(5), and 12(b)(6).

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Plaintiffs bear the burden of proving by a preponderance of the evidence that the Court possesses jurisdiction over the subject matter of their claims. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002). In reviewing a motion to dismiss under Rule 12(b)(1), the Court must accept the allegations in the complaint as true and draw all reasonable inferences in a plaintiff's favor. These allegations, however, "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6)

motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE 2D, § 1350). The Court may consider information outside of the pleadings to determine its jurisdiction. *Lipsman v. Sec'y of Army*, 257 F. Supp. 2d 3, 6 (D.D.C. 2003).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia*, 2004 U.S. App. LEXIS 2, *3 (D.C. Cir. Jan. 2, 2004); *Kingman Park*, 348 F.3d at 1040. A court's resolution of a Rule 12(b)(6) motion represents a ruling on the merits with res judicata effect. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

### III. ANALYSIS

#### A. Refund Claim

In their response to the Government's motion to dismiss, the Plaintiffs claim that they did not file a refund suit under 26 U.S.C. § 7422. They request an opportunity, under Federal Rule of Civil Procedure 15, to amend their Complaint to remove the "confusing language" regarding whether they intended to file a refund suit. Pls.' Opp. at 1-2. They state that they have an amended

Complaint prepared which removes "any reference to 'unassessed amounts'" and that they will file this amended Complaint "in the event the Court deems amendment necessary." Pls.' Opp. at 4. Despite these statements, their extensive Complaint lists, as a prayer for relief, a "refund of all un-assessed [sic] taxes." Compl., Prayer for Relief ¶ 1.4. The Court does not deem amendment of the Complaint necessary.[1] However, it will not ignore the refund claim found in the Complaint, because Plaintiffs reassert, also in their response to the Government's motion to dismiss, that if no Internal Revenue Code provision was disregarded, justifying damages, then they would like the Court to consider the refund claim as an alternative source of relief. Pls.' Opp. at 3. Therefore, the Court will assume that Plaintiffs intended to bring a refund suit.

The United States contends that the Court does not have subject-matter jurisdiction over Plaintiffs' refund claim. Def.'s Mot. at 3-4. The Court agrees because the Plaintiffs must exhaust their administrative remedies in order to bring a refund suit. The exhaustion requirement in 26 U.S.C. § 7422 is jurisdictional, based on the plain language of the statute. *See Lindsey v. United States*, No. 05-1761, 2006 U.S. Dist. LEXIS 58657, at *37 (D.D.C. August 22, 2006) (holding that § 7422 "creates a jurisdictional barrier to suits seeking a refund of taxes already collected"). A taxpayer may bring a refund suit pursuant to 28 U.S.C. § 1346(a)(1), but this section must be read in concert with § 7422. The right to bring an action under § 1346(a)(1) is limited in scope by § 7422(a), which requires taxpayers to file a refund claim with the Secretary of the

---

[1] The Court recognizes that Plaintiffs need not request permission to amend their complaint since a motion to dismiss is not a responsive pleading under Rule 15, and Plaintiffs can amend up to the point that the United States files an answer. *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 283 (D.C. Cir. 2000). Plaintiffs also recognize this rule. *See* Pls.' Opp. at 4 ("Plaintiff(s) [sic] respectfully point out that a motion to dismiss complaint under rule 12 is not a 'responsive pleading' within rule 15's amendment provisions.").

Treasury:

> No suit . . . shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

28 U.S.C. § 7422(a). "Read together, the import of these sections is clear: unless a claim for refund of tax has been filed . . ., a suit for refund . . . may not be maintained in any court." *United States v. Dalm*, 494 U.S. 596, 602 (1990); *see also Flora v. United States*, 362 U.S. 145, 177 (1960) (requiring full payment of a tax assessment before an income tax refund suit can be maintained in federal district court). Because they have not exhausted administrative remedies, Plaintiffs cannot bring a refund claim.

Accordingly, the Court will dismiss the Plaintiffs' refund claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction based on Plaintiffs' failure to exhaust administrative remedies.[2]

---

[2] The United States asserts that the Plaintiffs filed suit in the improper venue. It believes Plaintiffs should have filed the refund suit in Missouri, their state of residence, pursuant to 28 U.S.C. §§ 1346(a) and 1402(a)(1). Section 1346(a)(1) confers on federal district courts original jurisdiction for any civil action "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . under the internal-revenue laws." Section 1402(a)(1) also states that any action brought against the United States pursuant to § 1346(a) may be prosecuted *only* "in the judicial district where the plaintiff resides." If suit is not brought in the proper district, the court "shall dismiss" or it may, in the interest of justice, transfer the action to the proper federal district court. 28 U.S.C. § 1406(a). The Court finds that the interests of justice and judicial economy do not support transfer because this case should be dismissed on its merits. Since the Plaintiffs have failed to exhaust their administrative remedies with respect to the refund claim, a Missouri court would not have subject-matter jurisdiction over this claim. Missouri courts have also held that "a request for refund is a jurisdictional prerequisite to a refund suit." *Brown v. IRS*, No. 04-3297, 2005 U.S. Dist. LEXIS 2957, at *5 (citing § 7422(a)) (unpublished); *see also Rowden v. United States*, No. 4:03-CV-1788, 2004 U.S. Dist. LEXIS 8133, at *3 (E.D. Mo. 2004) (unpublished); *Chernin v.*

### B. Injunction

Plaintiffs claim that the Court should exercise its equity jurisdiction and grant their request for an injunction "[b]ased upon a history of unsuccessfully seeking answers and agency records providing a basis for such answers." Pls.' Opp. at 5. They state that they have "either exhausted administrative remedies available, or that such administrative remedies are inadequate." *Id.* In their Complaint, Plaintiffs seek an order "enjoining the Internal Revenue Service, its officer [sic], employees[,] and anyone working or action in behalf [sic] of the IRS, . . . from engaging in any further collection activity whether civil or criminal until all claims are fully resolved, and the return of all sums wrongfully collected if any." Compl., Prayer for Relief ¶ 1.5. The United States counters that the Anti-Injunction Act, 26 U.S.C. § 7421, bars such relief. Def.'s Mot. at 5. The Court agrees.

The Anti-Injunction Act states, in relevant part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a); *see also Hibbs v. Winn*, 542 U.S. 88, 102-03 (2004). The Act "unquestionably bars a suit from being brought in federal court where the suit seeks to enjoin the government from assessing or collecting federal taxes." *Lindsey*, 2006 U.S. Dist. LEXIS 58657, at *31. The Act "serves twin purposes: It responds to the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference; and it require[s] that the legal right to the disputed sums be determined in a suit for refund." *Hibbs*, 542 U.S. at 103 (citations and internal quotation marks deleted; brackets in original). Although the Act lists several statutory

---

*United States*, 149 F.3d 805, 813 (8th Cir. 1998).

exceptions, see 26 U.S.C. § 7421(a), none of these exceptions is applicable in this case.

Additionally, there are two judicially-created exceptions to the Act. The first exception applies when a plaintiff has no "alternative legal way to challenge the validity of a tax." *South Carolina v. Regan*, 465 U.S. 367, 373 (1984). The second exception applies when "it is clear that under no circumstances could the Government ultimately prevail, . . . and . . . equity jurisdiction otherwise exists." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962). The Plaintiffs have not invoked either of these judicially-created exceptions. Even if they had, they could not succeed. The first exception does not apply to the Plaintiffs because they could challenge the validity of their tax assessments by filing a refund claim. *See South Carolina*, 465 U.S. at 374-76. The second exception is also inapplicable because the Plaintiffs have "an adequate legal remedy, in the form of a refund claim, to challenge any improper collection of taxes, and [they] make no showing that [they] will face irreparable harm if required to pay [their] taxes in full before claiming a refund." *Lendway v. United States*, No. 05-1963, 2006 U.S. Dist. LEXIS 59392, at *16 (D.D.C. Aug. 23, 2006) (citing *Nat'l Taxpayers Union v. United States*, 68 F.3d 1428, 1436 (D.C. Cir. 1995)). Also, Plaintiffs have failed to establish that, "under the most liberal view of the law and the facts, the United States cannot establish its claim" to their taxes. *Enochs*, 370 U.S. at 7.

Therefore, this Court is not empowered to grant the relief sought, based on the plain language of the statute. A district court "must dismiss for lack of subject matter jurisdiction any suit that does not fall within one of the exceptions to the Anti-Injunction Act." *Gardner v. United States*, 211 F.3d 1305, 1311 (D.C. Cir. 2000). Accordingly, the Court will dismiss the Plaintiffs' request for an injunction.

### C. Damages Claim

*1. Proper Basis for Dismissal*

The United States claims that dismissal of the Plaintiffs' damages claim is proper under both Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The United States seemingly recognizes the split of authority in this District regarding whether the exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit. *See Lindsey*, 2006 U.S. Dist. LEXIS 58657, at *41-43 (citing cases on both sides of the issue). As discussed below, the Court finds that Rule 12(b)(6) is the proper basis upon which to address Plaintiffs' damages claim, since failure to exhaust administrative remedies is not a jurisdictional prerequisite to bringing suit but only an element of a claim. *See Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1245 (Feb. 22, 2006); *see also Turner v. United States*, 429 F. Supp. 2d 149, 154 (D.D.C. 2006); *Lindsey*, 2006 U.S. Dist. LEXIS 58657, at *38 ("This affirmative defense is thus properly brought through a motion to dismiss for failure to state a claim upon which relief can be granted.").

The question is not without moment. As noted by the Supreme Court in *Arbaugh*, the principles behind Rule 12(b)(1) and Rule 12(b)(6) are very different and the consequences are similarly different. 126 S. Ct. at 1244-45. A question of subject-matter jurisdiction "involves the court's power to hear a case" and "can never be forfeited or waived." *Id.* at 1244 (citation omitted). Thus, it can be raised at any time by any party or by the court *sua sponte*. Whether a plaintiff has stated a claim upon which relief can be granted involves the legal basis of the claim or the relief sought, not the power of the court to hear it. A motion under Rule 12(b)(6) can be waived by failure to make it soon enough. *Id.* at 1240. In addition, when state-law claims are joined with a single

federal claim over which the federal district court has no subject-matter jurisdiction, the court *must* dismiss the pendant state claims. *Id.* at 1244-45. In contrast, dismissal of the sole federal claim under Rule 12(b)(6) allows the federal court to retain the state-law claims as a matter of its discretion. *Id.*

This Circuit recognizes that "the word 'exhaustion' now describes two distinct legal concepts." *Avocados Plus v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). "Non-jurisdictional exhaustion" is a "judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court." *Id.* "Jurisdictional exhaustion," however, occurs when Congress uses its power to control the jurisdiction of the federal courts through administrative requirements. *Id.* As mandated by the Supreme Court, the presumption that an exhaustion requirement is non-jurisdictional can only be overcome by statutory language in which Congress "states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." *Id.* at 1248 (quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984)) (internal quotation marks omitted). This language must be "sweeping and direct." *Id.* at 1248 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)) (internal quotation marks omitted).

*Arbaugh* reminded the lower courts of these distinctions and cautioned against "drive-by jurisdictional rulings" that fail to recognize the differences. *Arbaugh*, 126 S. Ct. at 1242. To assist the courts, the Supreme Court enunciated a rule to be applied:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 1245 (citation omitted). Congress has plainly demonstrated its ability to write clear jurisdictional language into other sections of the Internal Revenue Code, and has chosen not to do so in § 7433. For example, 26 U.S.C. 7421(a), which states that "except as provided [in various sections of the Code], no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed," was previously found by this Circuit to "by its terms den[y] *jurisdiction* to 'any court' in actions seeking to enjoin the assessment or collection of taxes." *Americans United Inc. v. Walters*, 477 F.2d 1169, 1175 (D.C. Cir. 1973) (emphasis added); *see also Gardner*, 211 F.3d at 1311 ("The District Court must dismiss for lack of *subject matter jurisdiction* any suit that does not fall within one of the exceptions to [§ 7421(a)])." (emphasis added)). In addition, 26 U.S.C. § 7422(a) contains jurisdictional language, stating that "no suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously . . . assessed or collected . . . until a claim for refund or credit has been duly filed . . . according to the provisions of law in that regard." The statutory language of these provisions is in sharp contrast with that of § 7433, which merely states that "a judgment for damages shall not be awarded . . . unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1). The conspicuous absence of jurisdictional language in § 7433 leads this Court to heed the Supreme Court's warning against "drive-by jurisdictional rulings." *Arbaugh*, 126 S. Ct. at 1242.

Therefore, this Court is persuaded to adhere to the cautionary instructions in *Arbaugh* and finds that exhaustion of administrative remedies under TBOR is non-jurisdictional. The statute is crystal clear that pre-suit exhaustion is a requirement to the maintenance of the suit for damages,

but it does not address a district court's jurisdiction. Congress must "clearly state[]" that "a threshold limitation on a statute's scope shall count as jurisdictional," *Arbaugh*, 126 S. Ct. at 1245, and because jurisdiction is such a fundamental concept, its absence cannot be assumed without a definite expression of congressional intent. Thus, TBOR is not sufficiently definite under *Arbaugh*, and the Court will assess whether Plaintiffs' properly state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), rather than assess whether subject-matter jurisdiction exists under Rule 12(b)(1).

### 2. Exhaustion of Administrative Remedies

Both parties agree that the Code and regulations require a claimant to exhaust available administrative remedies prior to suit. *See* 26 U.S.C. § 7433(d)(1) ("A judgment for damages shall not be awarded . . . unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."); Pls.' Opp. at 6 ("Counsel correctly reads the regulation governing such administrative remedies. These regulations make clear that an 'action for damages filed in federal district court may not be maintained unless the taxpayer has filed an administrative claim pursuant to . . . this section.'"). The Plaintiffs concede, by not contesting, that they did not file an administrative claim prior to filing suit. Instead they argue that their Complaint seeks "a determination as to whether officers or employees of defendant's agent disregarded the provisions of the Internal Revenue Code or regulations promulgated thereunder in connection with collection activity" to support their claims for damages. Pls.' Opp. at 3.

The Government asserts that a pre-suit administrative claim is a necessary predicate for the government's waiver of sovereign immunity, without which the Court has no subject-matter

jurisdiction to consider Plaintiffs' damages claim. Def's. Mot. at 7-8. In this regard, it also relies on the regulations promulgated by the Secretary of the Treasury that provide that an administrative claim for monetary damages must be submitted to the Area Director, Compliance Technical Support Manager, of the geographical area in which the taxpayer currently resides. *Id.* at 8; *see also* 26 C.F.R. § 301.7433-1(e)(1). In this written notice, the taxpayer is to notify the IRS of (1) the name, current address, current telephone numbers, and taxpayer identification number; (2) the grounds for the claim; (3) a description of the injuries incurred by the taxpayer; (4) the dollar amount of the claim, including any damages not yet incurred but that are reasonably foreseeable; and (5) the signature of the taxpayer. 26 C.F.R. § 301.7433-1(e)(1), (2). According to the United States, any lawsuit is fatally deficient unless preceded by this notice and opportunity for the IRS to consider a claim prior to litigation. Def's. Mot. at 8.

Plaintiffs argue that the administrative remedies available in 26 C.F.R. § 301.7433-1(e) are "at best unavailable, and at worst, wholly inadequate." Pls.' Opp. at 9. They state that "[b]ased upon a history of unsuccessfully seeking answers and agency records . . . Plaintiff(s) [sic] have asserted that they have either exhausted administrative remedies available, or that such administrative remedies are inadequate." Pls.' Opp. at 5. Plaintiffs allege that they had repeated contacts with the IRS about their taxes, but this contact was not in conformity with section 301.7433-1(e), and, therefore, does not meet the administrative exhaustion requirements. Despite their repeated contact, the regulation is clear on the proper procedure to notify the IRS of a dispute. *See* 26 C.F.R. § 301.7433-1(e); *see also id*. § 301.7433-1(d) (section entitled "No civil action in federal district court prior to filing an administrative claim").

> As the Supreme Court has noted,
>
>> the exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress charges them to administer. Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise.

*McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Therefore, "[w]here Congress specifically mandates, exhaustion is required," and courts have "long acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id.* at 144-45. The Court cannot agree with Plaintiffs' argument that they should be excused from first advancing their claims in the administrative process. As Judge Bates has succinctly explained in a similar case:

> Plaintiffs . . . miss the mark with their arguments that the 301.7433-1(e) procedures are inadequate or that pursuit of administrative remedies would be futile. The TBOR admits of no such exceptions to its exhaustion requirement. . . . [W]hen exhaustion is mandated by statute, courts are not free to carve out exceptions that are not supported by the text.

*Turner*, 429 F. Supp. 2d at 152 (citing *McCarthy*, 503 U.S. at 144 and *Avocados Plus*, 370 F.3d at 1247-48 (D.C. Cir. 2004) ("If [a] statute does mandate exhaustion, a court cannot excuse it.")). Congress very specifically imposed a requirement that TBOR plaintiffs first exhaust administrative remedies before repairing to court. The Plaintiffs have not complied.

Plaintiffs' further arguments that the regulation is an unreasonable interpretation of the statute, was promulgated in excess of the agency's authority, and frustrates Congress' intent fare no better. Pls.' Opp. at 6. Regulations issued by an agency interpreting and applying a statute are entitled to deference as long as the regulations implement the statute in some reasonable manner.

*Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 476 U.S. 837, 843-45 (1984). Congress explicitly directed the Secretary of the Treasury to issue "all needful rules and regulations" for the enforcement of the Code. 26 U.S.C. § 7805(a). When the statutory text does not directly and conclusively address the precise question covered by regulations, an agency's construction of its governing statute through its regulations should be sustained as long as it "is a reasonable policy choice for the agency to make." *Chevron*, 467 U.S. at 845. Undoubtedly, application of this standard here supports the IRS regulations.[3]

Plaintiffs have failed to exhaust their administrative remedies. Therefore, the Court will dismiss the damages claim for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

## IV. CONCLUSION

For the reasons stated, the Complaint will be dismissed. A memorializing order accompanies this memorandum opinion.

Date: September 19, 2006                         /s/
                                    ROSEMARY M. COLLYER
                                    United States District Judge

---

[3] The first Taxpayer Bill of Rights (TBOR I) required exhaustion of administrative remedies before suit. In 1996, Congress enacted TBOR II, which amended § 7433(d) to provide that failure to exhaust administrative remedies was merely a factor that a court could use to reduce a judgment. In 1998, in TBOR III, Congress reinstated, verbatim, the language of TBOR I, which required exhaustion of administrative remedies prior to filing suit in district court. *See* 26 U.S.C. § 7433; *see also* Pls.' Opp. at 7-8.